IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTINE GARDNER SMITH,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.
_____/

No. 2:11-cv-03045-KJN

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff contends that the Commissioner erred by finding that plaintiff was not disabled from July 2, 2007, through the date of the final administrative decision. (Mot. for Summ. J., Dkt. No. 15.) The Commissioner filed an opposition to plaintiff's motion, as well as a cross-motion for summary judgment. (Opp'n, Dkt. No. 16.) For the reasons that follow, the court denies

////

---

[1] This case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 10, 11.)

1

plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff worked as a hearing specialist for ten years and as a supervisor for hearing specialists for eight years.[2]  (Administrative Transcript ("AT") 36, 37, 122.)  Plaintiff was born on March 29, 1951, and completed two years of college.  (AT 36, 122.)  On September 18, 2008, plaintiff applied for DIB, alleging that she was unable to work as of July 2, 2007, primarily due to migraine headaches.  (AT 60, 122.)  On February 19, 2009, the Commissioner determined that plaintiff was not disabled.  (AT 60, 65.)  Following plaintiff's request for reconsideration, the agency affirmed the determination on June 12, 2009.  (AT 64, 76.)  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing occurred on March 16, 2010.  (AT 32.)

In a decision dated May 27, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from July 2, 2007, through the date of the decision.  (AT 20.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 14, 2011.  (AT 3.)  On November 16, 2011, plaintiff filed this action for judicial review of the Commissioner's final decision.  (Compl., Dkt. No. 2.)

II.  PLAINTIFF'S ARGUMENTS

Plaintiff argues that the ALJ improperly discredited plaintiff's testimony regarding her symptoms and functional limitations.  (Mot. for Summ. J. at 7-14.)  Specifically, plaintiff contends that "the assertion of the ALJ that [plaintiff's] testimony is not credible because it is inconsistent with the objective medical evidence" is legally insufficient  (id. at 8), that "the ALJ

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

failed to articulate any rationale sufficient to demonstrate [plaintiff] was anything other than credible" (id. at 9), and that the ALJ failed to "consider [plaintiff's] 30 year work history in evaluating her credibility contrary to the Commissioner's binding ruling and regulations" (id. at 10).

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether: (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment . . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

not engaged in substantial gainful activity since July 2, 2007, the alleged onset date. (AT 22.)  At step two, the ALJ determined that plaintiff had the following severe impairments: migraine headaches; obesity; gastroesophageal reflux disease ("GERD"); sleep apnea; osteoporosis; glaucoma; and spastic colon. (AT 22.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 23.)

Before proceeding to step four, after considering the entire record, the ALJ assessed plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: she can lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for about 6 hours in an 8-hour workday; she can sit for about 6 hours in an 8-hour workday; and she should avoid exposure to hazards including machinery and heights.

(AT 24.)

////

---

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a hearings specialist, a job the ALJ found to be equivalent to "claims adjudicator" work. (AT 27.) This determination was based on the testimony of a vocational expert ("VE") (AT 55-56), who testified that plaintiff's work history was equivalent to the listing of "claims adjudicator" under the Dictionary of Occupational Titles ("DOT"), and that an individual with plaintiff's RFC could perform this work. See Dictionary of Occupational Titles § 169.267-010 (4th ed. 1991) (claims adjudicator, SVP 7, sedentary exertion), available at 1991 WL 647446. The DOT can be used by an ALJ and/or VE in determining whether a claimant, given his or her RFC, can perform his or her past relevant work. 20 C.F.R. § 404.15600(b)(2). The ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from July 2, 2007, through the date of the decision. (AT 28.)

      B.      <u>Plaintiff Has Not Shown That The ALJ Erred In Rendering An Adverse Credibility Determination</u>

Plaintiff argues that the ALJ improperly discredited plaintiff's testimony by relying on a lack of supporting objective medical evidence, by giving no other rationale sufficient to support an adverse credibility finding, and by failing to consider plaintiff's work history. (Mot. for Summ. J. at 8-10.)

During the hearing, plaintiff testified that: she was unable to perform her past work as a hearings specialist supervisor due to her migraine headaches (AT 38), her migraine headaches intensified since 2007 (AT 38-39), she experiences migraine headaches one to three times per week (AT 39), her anxiety and panic attacks inhibit her breathing, speech, and ability to be around people or crowds (AT 50-51), her back pain and knee pain make it difficult to perform daily chores because of the "upping and downing," and make it difficult to stand or walk for more than thirty minutes at a time (AT 52-53), her knee pain is a "four to eight" and prohibits her from climbing stairs because she must pause every two steps (AT 47-48), due to IBS she has explosive diarrhea and vomiting at least once a week (AT 49), and typing and writing cause her

5

hand to go numb and tingle on a daily basis (AT 48).

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). An ALJ must give "specific, clear and convincing reasons" in rendering an adverse credibility determination. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (explaining that if the claimant satisfies step one and "there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of symptoms.") (internal quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Id. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [the claimant's] testimony or between [her] testimony and [her] conduct, [the claimant's] daily activities, [her] work record,

6

and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Comm'r of Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

      1.     The ALJ Properly Determined That Plaintiff's Inconsistent Statements About Her Symptoms Undermined Her Credibility[4]

The ALJ discredited plaintiff's testimony due in part to plaintiff's own contradictory statements regarding the severity and persistency of her migraine headaches. (AT 26.)  A claimant's "prior inconsistent statements concerning [her] symptoms" is a proper consideration for the ALJ in evaluating credibility. Chaudhry v. Astrue, 688 F.3d 661, 672 (9th

---

[4] The record contains additional evidence that plaintiff apparently submitted to the Appeals Council after the ALJ issued the final decision on May 27, 2010. (AT 199.)  This evidence consists of about ninety pages of medical records dating from March 15, 2007, through June 25, 2010, and employment records regarding plaintiff's work history and Family Medical Leave Act certification. (AT 355-411, 416-42.)  The Appeals Council stated that it had considered this evidence, but found that it did not provide a basis for changing the ALJ's decision. (AT 4.)

Plaintiff does not specifically argue that the undersigned should consider any evidence in particular, let alone this additional evidence. (See generally Mot. for Summ. J.)  However, defendant specifically argues that the additional evidence should *not* be considered. (Opp'n at 11-12.)  Defendant asserts that new evidence should not be considered unless plaintiff meets the requirements enumerated in sentence six of 42 U.S.C. § 405(g), and argues that she has not done so. (Id. at 12.)

Sentence six of 42 U.S.C. § 405(g) codifies plaintiff's burden in a request for remand for consideration of new evidence. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (affirming the district court's refusal to remand when plaintiff established neither materiality of new evidence nor good cause for failing to submit it earlier).  However, "that standard applies only to new evidence that is not part of the administrative record and is presented in the first instance to the district court." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).  Any evidence submitted to and considered by the Appeals Council becomes part of the administrative record and must be considered by the district court in determining whether the ALJ's decision is supported by substantial evidence. Id. at 1163.  Accordingly, given that such evidence is already part of the record in this case, the undersigned has considered it in rendering this decision. See Brewes, 682 F.3d at 1164; Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000); Lingenfelter, 504 F.3d at 1030 n.2 (9th Cir. 2007).

Cir. 2012) (citing Tommasetti,553 F.3d at 1039).  Plaintiff testified that her migraine headaches began when she was twenty years old and intensified in 2007.  (AT 25, 38, 39.)  Plaintiff also testified that her migraine headaches had stayed "about the same" since she retired in July of 2007, when they occurred one to three times per week, lasting one to three days per episode.  (AT 38, 39, 53.)  Earlier, in a Social Security Disability Report, plaintiff indicated that she experienced migraine headaches six to eight times per month, with one to three days of recovery required for each episode.  (AT 26, 134.)

However, as the ALJ noted, the record reveals that in January 2008, plaintiff reported to Dr. Gardener that she experienced migraine headaches much less frequently, with migraines occurring "twice a month, rather than twice per week."  (AT 26, 320 (emphasis in ALJ's decision).)  Plaintiff's self report to Dr. Gardener thus conflicts with her testimony and her allegations of more frequent migraine headaches.  Further, plaintiff's testimony that her migraines stayed "about the same" since 2007 is somewhat undercut by plaintiff's 2008 report to Dr. Tatikunta that her headaches were better when she cut down on coffee, and plaintiff's 2009 report to Dr. Gardener that "Maxalt helps her migraines."  (AT 53 (testimony that migraines "stayed about the same" since 2007), AT 325 ("headaches better as she is cutting down on coffee"), AT 336 ("Maxalt helps her migraines" and marijuana also helps her migraines).)  These statements are supported by substantial evidence in the record, and because the ALJ may properly rely on plaintiff's own inconsistent statements in making a credibility determination, the ALJ did not err.  See Chaudhry, 688 F.3d at 672.

    2. The ALJ Properly Determined That Plaintiff Received Conservative Treatment, Undermining Her Credibility Regarding Severity Of Symptoms

Aside from noting plaintiff's inconsistent statements, the ALJ also discounted plaintiff's credibility based on her ordinary and routine treatment.  (AT 26.)  A claimant's relatively conservative treatment is a proper consideration in an ALJ's credibility determination.  Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to conservative treatment

undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ properly discredited claimant's allegations of "persistent and increasingly severe pain and discomfort over a period of many years" when claimant "denied having received more than rather minimal conservative treatment for his various complaints") (internal quotation marks omitted).  Moreover, a condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act.  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility . . . .").

Here, the ALJ found that plaintiff's migraines were treated "conservatively" (AT 22) and were "fairly well controlled with Maxalt and medical marijuana and a decreased coffee intake" (AT 26).  As noted above, the record confirms that plaintiff reported improvement while using Maxalt, Atenolol, and marijuana for her migraine headaches in 2008.[5]  (AT 320.)  One year later, plaintiff informed Dr. Gardener that Maxalt helped her migraine headaches and that she continued to note a benefit with marijuana.  (AT 336.)  Additionally, plaintiff's treating physician Dr. Tatikunta advised plaintiff to cut down on coffee, and plaintiff later informed Dr. Tatikunta that her "[h]eadaches [were] better" after she followed his instruction to drink less coffee.  (AT

---

[5] An ALJ is required to consider, but permitted to discredit, a claimant's allegations of a medication's side effects.  Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010).  Plaintiff's moving papers neither discuss the alleged side effects of plaintiff's medications nor specifically argue that the ALJ's decision did not properly address those alleged side effects.  (See generally Mot. for Summ. J.)  In any event, however, the ALJ considered plaintiff's "allegations of medication side effects, including lethargy," but found they were "not as intense as alleged" due to plaintiff's frequently appearing "alert, well appearing, and in no distress" at physical examinations (AT 26, 134, 293, 309, 323, 331), as well as due to her "substantially unchanging prescriptions."  (AT 27.)  Indeed, plaintiff's medical records indicate that plaintiff used Maxalt for her migraines and did so continuously for years.  (AT 40, 290, 309, 320, 322, 335.)  The evidence in the record thus supports the ALJ's decision to partially discount plaintiff's allegations regarding the intensity of the alleged side effects of plaintiff's medication.

322-23, 325.)

As to plaintiff's symptoms of knee pain, GERD, and cardiac problems, the record confirms that these ailments were also conservatively treated. The record reveals that plaintiff was prescribed NSAID Nabumetone for her right knee pain, and plaintiff testified that taking "[j]ust Tylenol" for her knee pain was helpful. (AT 41, 331-32.) In addition, treating physician Dr. Tatikunta advised plaintiff to take Prilosec for her GERD, and less than a year later, indicated in a medical report that plaintiff's GERD was "stable." (AT 26, 293, 324.) Finally, the ALJ also noted that "the record contains little significant evidence of continuous treatment for a cardiac impairment," undercutting plaintiff's allegations of more frequent cardiac symptoms. (AT 22, 27.)

The ALJ also discredited plaintiff's testimony in part because plaintiff's "visual complaints" were inconsistent with the observations of her optometrist, Dr. Bonnie Belle Quiroz, who noted in January 2009 that plaintiff did not have any "concerns" or take any medication for her eyes. (AT 26-27, 333.) Following the ALJ hearing on March 16, 2010, however, plaintiff submitted additional medical reports indicating more frequent visits with Dr. Quiroz and the initiation of prescription eye drops in June 2009. (AT 377, 379.) This evidence is part of this administrative record. See Brewes, 682 F.3d at 1164. The ALJ thus erred in discrediting plaintiff's testimony based upon a lack of eye treatment and a lack of eye-related medication, as the record reveals that plaintiff did in fact receive such treatment and medication. However, the ALJ's error in this regard was harmless given that the ALJ provided several other valid reasons for discrediting plaintiff's testimony, and those reasons are supported by the evidence of record. See Molina, 674 F.3d at 1115. In addition, the ALJ did not entirely discredit plaintiff's testimony regarding her eye condition, because the ALJ ultimately found that, given that the record contained *some* evidence of an eye condition, plaintiff should "avoid work in hazardous environments." (AT 27.)

////

In sum, the record confirms that plaintiff underwent conservative treatment for headaches, knee pain, GERD, and cardiac problems, and that she favorably responded to prescription medications like Maxalt, Atenolol, and marijuana, as well as to decreased coffee intake and over the counter medications. The ALJ thus correctly considered plaintiff's relatively conservative treatment in conjunction with the positive response to medication in evaluating plaintiff's allegations of disabling symptoms. See Tommasetti, 533 F.3d at 1039-40; Parra, 481 F.3d at 751; Fair, 885 F.2d at 604; Warre, 439 F.3d at 1006.

### 3. The ALJ Properly Determined That Plaintiff's Allegations of Disabling Pain Were Inconsistent With Her Treating Physicians' Observations And The Objective Medical Evidence

The ALJ also discredited plaintiff's testimony in part because of a lack of objective medical evidence supporting her testimony regarding pain. "[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch, 400 F.3d at 680 (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). However, although lack of medical evidence cannot form the "sole" basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 680-81 (ALJ did not err in relying in part upon the record's "minimal objective evidence" in discrediting plaintiff's testimony because ALJ *also* "made additional specific findings" regarding plaintiff's activities of daily living, lack of consistent treatment, and failure to seek treatment, all of which supported the adverse credibility determination).

Here, the record supports the ALJ's finding that plaintiff's allegations of disabling pain were inconsistent with the observations of her physicians and were not supported by the medical evidence of record. As the ALJ noted, contrary to her representations of disabling pain, the record reveals that plaintiff routinely presented herself to treating physician Dr. Tatikunta as "alert, well appearing, and in no distress." (AT 26, 134, 293, 309, 323, 331.) As the

ALJ also noted, although plaintiff testified that she has explosive diarrhea and vomiting at least once a week, the record does not reflect continuous complaints or treatment for this symptom or condition, and plaintiff denied any "urinary incontinence, prolapsed symptoms or defecatory dysfunction." (AT 26, 312.) Similarly, the ALJ found that plaintiff's allegations of severe cardiac symptoms were undercut by an EKG Impression that revealed only "borderline abnormalities," and a lack of significant "continuous treatment." (AT 27, 301.) As the ALJ noted, the record contains plaintiff's "normal" echocardiogram studies showing only "mild" or "trace" abnormalities. (AT 22.)

The ALJ also noted that plaintiff's allegations of pain and tenderness in her right knee conflicted with a physical examination by her doctor that revealed "no joint tenderness, deformity or swelling" and a good range of motion (AT 27, 331), as well as an imaging study of plaintiff's right knee which confirmed that plaintiff's "bones, joints and soft tissues [were] within normal limits" (AT 27, 299). In response to plaintiff's allegation that obesity compounded her right knee pain, the ALJ noted that the record "do[es] not provide any objective findings to show that the claimant has any significant functional limitations that would preclude . . . medium exertional work." (AT 27.)

The ALJ also found "no significant medical evidence" in the record to substantiate plaintiff's allegation of hand numbness, either as an underlying impairment or symptom of one. (AT 23, 48.) Likewise, the ALJ discredited plaintiff's testimony (AT 27, 336) and allegations of "speech limitations" because "[n]o treating source has indicated that the claimant has speech limitations, other than merely reciting the claimant's subjective complaints" and the record itself showed a "lack of evidence showing treatment for such symptoms." See Burch, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination."); Tommasetti, 533 F.3d at 1041 ("[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."). Plaintiff has not shown that the ALJ erred in relying in part upon a

lack of supporting objective medical evidence as one of the several reasons the ALJ offered for discrediting plaintiff's testimony.

### 4. Plaintiff Has Not Shown That The ALJ Failed To Properly Consider Plaintiff's Work History

Plaintiff argues that the ALJ was required to consider plaintiff's "30 year work history" in making a credibility determination, and the ALJ should have found such work history to weigh in favor of finding plaintiff to be credible. (Mot. for Summ. J. at 9-10 n.3 ("an individual who has performed continuous gainful work activity since 1978 does not simply wake up one day and decide not to show up for work anymore without a very good reason" and "[w]hat is good for the goose must be for the gander as well. Allowing ALJ's to take note of a lack of work history as reason to find a claimant not credible, but then ignore a positive work history allows for a misapplication of the Commissioner regulations.").)

In support of this argument, plaintiff cites to Schaal v. Apfel, wherein the Second Circuit Court of Appeals discussed the potential impact of a claimant's poor work history upon her credibility. 134 F.3d 496, 502 (2nd Cir. 1998). This out-of-circuit case is unpersuasive here, however, because while it signifies that a "good work history *may* be deemed probative of credibility" just as "a poor work history can reasonably be deemed to have the opposite significance," it does not *require* an ALJ to credit testimony from a plaintiff with a "good" work history. Schaal, 134 F.3d at 502 (emphasis added). The Schaal decision uses permissive language indicating only that a "good" work history "may" help prove credibility. See Schaal, 134 F.3d at 502. In other words, an ALJ must consider a claimant's work record, but plaintiff offers no cases suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or "good" work history. 20 C.F.R. § 404.1529(c)(3). Likewise, plaintiff has identified no authorities specifically requiring an ALJ to deem a lengthy work history as itself indicative of a claimant's veracity. The other authorities plaintiff cites, such as 20 C.F.R. § 404.1529(c)(3), require the ALJ to "consider" a claimant's "work record" as part of a credibility determination,

13

but do not expressly require an ALJ to construe a lengthy work record as supporting a finding of credibility.

Here, the ALJ did specifically consider plaintiff's work record in rendering the credibility determination; she discredited plaintiff's testimony in part because plaintiff's work history revealed plaintiff had worked for years despite having migraines. (AT 26.) This finding is supported by substantial evidence and confirms that the ALJ indeed considered plaintiff's work record, although she did not construe that record in the manner plaintiff would have liked. Moreover, even if plaintiff's having worked despite suffering some degree of migraines was not a sufficient reason to discount plaintiff's testimony, the ALJ provided several other valid reasons for discrediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record). Plaintiff has not shown that the ALJ erred in her consideration of plaintiff's work history.

V.  CONCLUSION

In sum, plaintiff has not shown that the ALJ improperly discounted her credibility by solely relying on a lack of objective medical evidence, failing to allege any other sufficient rationale, and ignoring her "30-year work history." In fact, in discounting plaintiff's credibility, the ALJ properly considered plaintiff's own inconsistent statements and various examples of her conservative treatment, in addition to a lack of objective medical evidence supporting plaintiff's testimony regarding the severity of her symptoms. The ALJ also properly considered plaintiff's work record, including the fact that it revealed plaintiff's ability to work despite migraine headaches, and plaintiff has not identified authorities that require an ALJ to deem a lengthy work history as probative of a claimant's veracity.

////

////

////

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 16) is GRANTED.

3. Judgment is entered for defendant.

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED: March 18, 2013

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE